**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. ________________________

LUXOR AGENTES AUTONOMOS DE INVESTIMIENTOS, LTDA., a Brazilian corporation

Plaintiff,

v.

INTERTRANSFERS, INC., a Florida corporation, and JOSE AUGUSTO MARTINS, individually

Defendants.

____________________________________/

**COMPLAINT**

Plaintiff Luxor Agentes Autonomos de Investimientos, Ltda. ("Luxor" or "Plaintiff"), by counsel, alleges for its Complaint against defendants Intertransfers, Inc. ("Intertransfers") and Jose Augusto Martins ("Martins") (collectively, "Defendants") as follows:

**Nature of the Action**

1. Luxor files this lawsuit pertaining to approximately $12,000,000.00 that Defendants have stolen, converted, and otherwise wrongly obtained from what was supposed to be a simple foreign currency exchange transaction. Luxor, a foreign corporation, entered into an oral agreement with Intertransfers for the exchange of US Dollars into Brazilian Reais. Pursuant to the agreement, Luxor effectuated the tender of $11,869,312.00 in US Dollars of its funds to an Intertransfers' affiliated bank account, in order to have Intertransfers execute the foreign currency conversion and return the funds to Luxor. Defendants subsequently reneged on their

promises and agreements with Luxor and have, to date, failed to provide Luxor with any of its own funds.

2.   Luxor brings this action to recover damages that it has incurred as a direct and proximate result of Defendants' misconduct.

### The Parties

3.   Plaintiff Luxor is a Brazilian corporation with its principal place of business in Belem, Brazil.

4.   Upon information and belief, defendant Intertransfers is a corporation organized under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

5.   Upon information and belief, defendant Martins is sui juris, a citizen of Miami-Dade County, Florida domiciled in South Miami, Florida, and at all material times was an executive and officer of Intertransfers.

### Jurisdiction and Venue

6.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the action is between citizens of a State and a citizen of a foreign state, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7.   This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants (i) are citizens of the State of Florida, (ii) committed tortious acts in the State of Florida, (iii) operated, conducted, engaged in or carried on a business or business venture in the State of Florida, and/or (iv) engaged in substantial and not isolated activity within the State of Florida.  Fla. Stat. § 48.193.

8.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and otherwise because a substantial portion of the events giving rise to this action occurred in this district.  In

addition, Defendants reside in and transact business in this district and are subject to personal jurisdiction in this district.

## Background Facts

9.     Plaintiff Luxor is a Brazilian entity which serves as a broker and/or advisor to entities that sell securities and other financial instruments.

10.    Defendant Intertransfers is a Florida corporation that has been in business for more than 10 years and provides money transfer and money exchange services to the Brazilian and Hispanic communities. Intertransfers' main office is located in Downtown Miami, Florida.

11.    Notably, Intertransfers is a Florida licensed and bonded money transmitter which touts itself as being "committed to operate in a safe and sound manner consistent with the highest legal and ethical standards."  A copy of excerpts from the Intertransfers website is attached as **Exhibit A**.  Intertransfers notes on its website that it "must maintain strict compliance with all applicable laws and regulations" and that its "highest Managing Executive Officers are committed to the implementation of a strong and effective program to comply with the spirit and specific provisions of the USA and European currency transaction reporting and anti-money laundering laws and regulations, as it does with other provisions in all related laws related to business licensing, accounting, employment and transaction."  Id.

12.    According to its website, Intertransfers has authorized processing centers in Florida, Connecticut, Georgia, Massachusetts, New Jersey and South Carolina and "operates its own stores in the United Kingdom and Germany."  Id.  Intertransfers has 52 payers in Latin America and Europe with over 8,000 payment locations.  Id.  Intertransfers "tries to negotiate the best exchange rate available to provide its clients with the highest rate."  Id.

13.    At all times material hereto, defendant Martins was the President of Intertransfers. Martins is a citizen of Florida.

14.     Intertransfers and Martins held themselves out to the public generally, and to Luxor specifically, to have the requisite degree of skill, knowledge and expertise to effectuate money transfer and currency exchange transactions.

15.     On or about February 20, 2011, Luxor entered into a Fee Agreement with Tillerman Securities, Ltd. ("Tillerman"), a Bahamian entity, by which Luxor agreed to provide services to Tillerman and introduce Tillerman to potential stock brokerage opportunities including market transactions, financial structures, project financing and import export transactions (the "Fee Agreement").  In return, Tillerman agreed to pay Luxor commissions upon the successful completion of any given transaction within the scope of the Fee Agreement.

16.     Pursuant to the Fee Agreement, Tillerman agreed to pay commissions earned by Luxor in US Dollars by wire transfer.

17.     Throughout the term of the Fee Agreement, Luxor earned commissions derived from the sale of securities and other financial instruments in the aggregate amount of US $11,869,312.00 (the "Commissions").  The Commissions were to be paid during the month of November 2011 via three separate wire transfers.

18.     Prior to the payment of the Commissions and given that the Commissions were to be paid in US Dollars in accordance with the Fee Agreement, Luxor sought the services of Martins and his company Intertransfers, in order to exchange the Commissions from US Dollars to Brazilian Reais at a more favorable exchange rate than those offered by large financial institutions.

19.     Luxor's President had known Martins for approximately 7 years.  Luxor's President reasonably believed Martins and Intertransfers to be professional and respectable money transmitters. In fact, in deciding to conduct business with the Defendants, Luxor

justifiably and materially relied upon the Defendants' disclosed adherence to all pertinent laws and regulations as well as its anti-money laundering compliance program.

20.     The parties' course of dealing was oral - which is not unusual in South America.

21.     Following detailed discussions, on or about November 7, 2011, Luxor's President on behalf of Luxor, while in Brazil met via Skype with Intertransfers, via Martins who was in Miami, to discuss using the services of Intertransfers to exchange the Commissions from US Dollars to Brazilian Reais. Luxor employees Priscilla Lima and Guilherme Mayer also attended the meeting via Skype. During this meeting, Luxor (per its President) and Intertransfers (per Martins) agreed to the following terms: (1) Intertransfers agreed to exchange the Commissions from US Dollars to Brazilian Reais at an exchange rate of 1.85 Brazilian Reais per US Dollar (approximately 4% above the "Ptax" rate in effect at the time) and remit said exchanged Commissions to Luxor in Brazil within 3 to 10 days following receipt of the Commissions but no later than December 5, 2011; (2) per Intertransfers' request, Luxor agreed to arrange for Tillerman to send the Commissions directly to an HSBC account under the name of Wit Money Services Express, Ltd. in the United Kingdom ("Wit") – an affiliate branch of Intertransfers - for currency exchange through Intertransfers from US Dollars to Brazilian Reais and for prompt disbursement to Luxor's HSBC account in Brazil within 3 to 10 days following receipt of the Commissions but no later than December 5, 2011; and (3) Luxor agreed to allow Intertransfers to profit from the spread between its purchase of the US Dollars from Luxor and its ability to sell those US Dollars elsewhere at a higher price (the "Oral Agreement"). Martins then provided wire transfer instructions for Wit's bank account via Skype chat.

22. At all times relevant to this cause, Luxor justifiably relied on Martins' assurances and/or representations of Defendants' skill, knowledge, and expertise when deciding to hire Defendants.

23. Before proceeding with the wire transfer via Wit, Tillerman and Luxor confirmed with Martins and via independent research that Wit was an affiliate company of Intertransfers and that Wit's bank account and Wit were ultimately owned by Defendants. Tillerman and Luxor also confirmed that Intertransfers followed Anti-Money Laundering Compliance Programs specific to each country where it operates and was otherwise a fully licensed and compliant party for the receipt of funds.

24. In furtherance of said Oral Agreement, Luxor authorized Tillerman's executive H. Christian Saunders to execute three separate wires for the Commissions to Wit's HSBC Account in London. Copies of said authorizations are attached hereto as composite **Exhibit B**.

25. In accordance with these authorizations, Tillerman disbursed the Commissions directly to Wit in three separate transfers for the benefit of Luxor as follows:

   a. On November 9, 2011, Tillerman wired Wit $967,391.00 US Dollars (Swift Confirmation Number CO111110913130700).

   b. On November 15, 2011, Tillerman wired Wit $901,921.00 US Dollars (Swift Confirmation Number 2002F04113200201).

   c. On November 17, 2011, Tillerman wired Wit $10,000,000.00 US Dollars (Swift Confirmation Number 3215625194140800).

(the "Wires"). Upon Defendants' receipt of the Wires via Wit's bank account, Luxor had fully performed its obligations under the Oral Agreement.

26. After sending the Wires, Tillerman sent a letter to Wit referencing the Wires and confirming that "all said items are amounts due to our referral agent (referenced below) in connection with client acquisition activity in Latin America during 2011. Agent: Luxor Autonomos de Investimientos Ltda. CNPJ 08.347.663/0001-99, Belem, Para, Brazil." A copy of said confirmation letter is attached hereto as **Exhibit C**.

27. Upon Tillerman's submission of the Wires, Luxor also reconfirmed with Martins the terms of the Oral Agreement, and Martins reconfirmed Intertransfers' agreement to remit the exchanged Commissions to Luxor in accordance with the timeframe and other terms of the Oral Agreement.

28. Later, on or about December 5, 2011, Luxor (via its President) contacted Martins to inquire as to the status of the Wires. Martins promised that Intertransfers would remit the exchanged Commissions to Luxor. Per the terms of the Oral Agreement, Intertransfers was in breach for failing to remit the exchanged Commissions by December 5, 2011.

29. Following December 5, 2011, Luxor (via its President) contacted or attempted to contact Martins several times per week to demand Intertransfers' performance of the Oral Agreement.

30. On or about December 15, 2011, the President of Luxor and Martins met in Brazil at the residence of a mutual acquaintance to discuss the status of the Commissions. In response to Luxor's demand for payment, Martins (upon information and belief) misrepresented that the funds had been frozen by Scotland Yard in the United Kingdom and promised, personally and on behalf of Intertransfers, to remit the exchanged Commissions within one to two weeks.

31. On or about December 24, 2011 at approximately 7:30 A.M., Cesar Lacava ("Lacava"), on behalf of Luxor, met with Martins' wife and Intertransfers Officer, Iraci Romao

Oliveira ("Oliveira"), to request Intertransfers' performance of the Oral Agreement and payment of the exchanged Commissions. At that time, Oliveira indicated that the exchanged Commissions would be promptly remitted to Luxor's HSBC Account in Brazil pursuant to the Oral Agreement.

32. During the week of December 25, 2011, Luxor (via its president) made numerous inquiries to Martins, Oliveira, Martins' daughter and Martins' son, Eduardo Martins, via telephone and/or Skype to inquire about the Oral Agreement and the payment of the exchanged Commissions. During these conversations, Martins, Oliveira, Martins' daughter and Martins' son, promised personally and on behalf of Intertransfers, that they would promptly remit the exchanged Commissions to Luxor.

33. On or about December 26, 2011, Lacava met with Martins at a cafe in Miami, Florida to continue to ask Martins for payment and/or an explanation of the amounts withheld. Martins again personally promised to promptly remit the exchanged Commissions to Luxor.

34. On or about December 28 and December 29, 2011, Lacava met with Martins at Martins' home in Miami, Florida to inquire about the Oral Agreement and the payment of the exchanged Commissions. Martins continued to personally promise payment of the exchanged Commissions to Luxor.

35. Despite continued attempts to reach Martins, Luxor's representatives were unable to communicate with Martins, directly or indirectly, after the December 29th meeting.

36. On or about January 10, 2012, Martins contacted Luxor's President via Skype and stated that he was "having some problems" but would remit the exchanged Commissions within 120 days.

37. Despite multiple promises by Martins, Defendants have failed to make payment or otherwise remit the exchanged Commissions to Luxor.

38. Intertransfers is in default of the Oral Agreement by failing to timely remit the exchanged Commissions in Brazilian Reais to Luxor's HSBC Account in Brazil. Consequently, the entire balance is due and payable.

39. Intertransfers is currently indebted to Luxor for a sum certain in the amount of US $11,869,312.00 or 21,958,227.20 Brazilian Reais as of December 6, 2011.

40. Upon information and belief, Defendants have not only failed to process the Wires in accordance with the Oral Agreements, but have also intentionally taken possession and control of the Wires for their own use with full knowledge that the Wires comprised Commissions that belong to Luxor.

41. On January 10, 2012, Luxor through counsel and in accordance with Section 772.11, Fla. Stat., made written demand to Defendants for payment of the entire amount of the Wires. Defendants have failed to respond to that demand.

42. All conditions precedent to bringing this action have been performed, have been waived, or have occurred.

43. Luxor has retained the undersigned counsel to represent it in this action and is obligated to pay its counsel a reasonable fee for services rendered and expenses incurred on its behalf.

## COUNT I
## Breach of Contract
## (against Intertransfers)

44. The allegations of paragraphs 1 through 43 are incorporated herein and realleged.

45. Luxor entered into the Oral Agreement with Intertransfers to provide the currency exchange and currency transfer services identified herein.

46. The Oral Agreement between Luxor and Intertransfers contained express or implied terms that required Intertransfers to exchange and pay to Luxor approximately 21,958,227.20 Brazilian Reais which represented all funds received by Wit on behalf of Intertransfers in US Dollars from Tillerman for the benefit of Luxor.

47. Luxor fulfilled its obligations under the Oral Agreement with Intertransfers by arranging for Tillerman to send the Wires to Intertransfers through Wit.

48. Intertransfers breached the Oral Agreement with Luxor by failing to perform the currency exchange and currency transfer services to which it agreed as part of the Oral Agreement.

49. As a direct and proximate result of Intertransfers' conduct as alleged herein, Luxor is entitled to recover damages from Intertransfers in an amount to be determined at trial.

## COUNT II
## Conversion
## (against Intertransfers and Martins)

50. The allegations of paragraphs 1 through 43 are incorporated herein and realleged.

51. At all times, Luxor was, and still is, entitled to the possession, use, enjoyment, and control of the Wires, which constitute specifically identifiable funds provided by Luxor to Intertransfers.

52. Defendants received Luxor's funds into Wit's merchant bank account.

53. Defendants, and each of them, have exercised control over the above-mentioned funds and have thereby intentionally deprived Luxor of the possession, use, enjoyment, and control of the funds and have converted the same to Defendants' own possession, use, enjoyment, and control without any legal right to do so.

54. Defendants' conversion of Luxor's funds lies outside of any contractual right that Defendants might have with respect to Luxor's funds.

55. Luxor has demanded the immediate return of the above-mentioned funds to its possession, use, enjoyment, and control, but Defendants have intentionally failed and refused, and continue to fail and refuse, to comply with that demand.

56. Intertransfers and Martins' dominion and control over such property have been to the exclusion of Luxor's rights to such monies.

57. Martins personally participated in Defendants' conversion of Luxor's funds.

58. Martins acted outside of the scope of his employment with Intertransfers when he personally participated in Defendants' conversion of Luxor's funds.

59. As a direct and proximate result of Defendants' conversion of Luxor's funds, Luxor is entitled to recover damages from Defendants in an amount to be determined at trial.

## COUNT III
## Civil Theft
**(against Intertransfers and Martins)**

60. The allegations of paragraphs 1 through 43 are incorporated herein and realleged.

61. Without Luxor's consent, Defendants willfully, knowingly, and with felonious intent obtained and used the property of Luxor with the intent to deprive Luxor of the right to that property.

62. Without Luxor's consent, Defendants willfully, knowingly, and with felonious intent obtained and used the property of Luxor for Defendants' own use.

63. To wit, Defendants retained Luxor's proceeds for Defendants' own use, despite Luxor's repeated demands for Defendants to return those proceeds.

64. Luxor has suffered significant harm as a result of Defendants' misconduct.

65. As a result, Defendants committed theft, in violation of Fla. Stat. §812.014, and Defendants are liable to Luxor in a civil action under Fla. Stat. §772.11.

## COUNT IV
### Unjust Enrichment/Imposition of Constructive Trust
(against Intertransfers and Martins)

66. The allegations of paragraphs 1 through 43 are incorporated herein and realleged.

67. In the alternative to Luxor's actions at law, Luxor seeks recovery for Defendants' unjust enrichment and the imposition of a constructive trust.

68. As a result of Defendants' acts and omissions as set forth herein, monies and other assets in which Luxor has a superior legal and equitable interest have been possessed and retained by Defendants, who have continued to withhold the same from Luxor, all to the detriment of Luxor.

69. Defendants have been unjustly enriched at the expense of Luxor by their possession and retention of the monies and other assets mentioned above.

70. As between Defendants on the one hand and Luxor on the other, it would be inequitable and unjust to allow Defendants to possess and retain the monies and other assets mentioned above while depriving Luxor of the same.

71. Luxor is entitled to an order declaring that all of the monies and other assets held by Defendants as alleged herein are held by Defendants as the constructive trustees for Luxor and

requiring Defendants to return the same to Luxor or to pay the same into the registry of the Court immediately; or, in the alternative, appointing a receiver or other trustee and ordering the same to take possession of the funds in question immediately and maintain the same for the benefit of Luxor during the pendency of this action.

## COUNT V
### Promissory Estoppel
### (against Intertransfers and Martins)

72. The allegations of paragraphs 1 through 43 are incorporated herein and realleged.

73. Martins and Intertransfers promised that it would exchange the Wires from US Dollars to Brazilian Reais and transfer the funds to Luxor's HSBC Account in Brazil on or before a date certain, and intentionally induced Luxor to believe that the Wires would be so disbursed and to act upon that belief.

74. In agreeing to provide Intertransfers with the Wires via Wit's bank account, Luxor acted in reliance upon Martins and Intertransfers' representations oral and implied that Intertransfers would perform the currency exchange services it promised prior to December 5, 2011.

75. In agreeing to allow Intertransfers to perform their role as currency exchange and money transmitter entity, Luxor justifiably and detrimentally relied upon Intertransfers' explicit and implicit promise to promptly render the currency exchange and transfer services it promised.

76. Martins acted outside the scope of his employment with Intertransfers when he personally promised that it would remit the Wires to Luxor and converted the funds for his own personal use.

77. As the direct and proximate result of such reliance, Luxor has incurred actual and substantial damages.

## COUNT VI
## Money Had and Received
## (against Intertransfers and Martins)

78. The allegations of paragraphs 1 through 43 are incorporated herein and realleged.

79. In the alternative to Luxor's First and Second Causes of Action, Luxor alleges that it has suffered irreparable harm for which there is no adequate remedy at law.

80. Defendants wrongfully retained money paid by Luxor to Defendants in the form of the aforementioned Wires submitted.

81. Defendants have enjoyed and continue to enjoy the benefit of the funds wrongfully retained from Luxor. Defendants have no legal right to or justification for retaining the funds.

82. As a direct and proximate result of Defendants' conduct as alleged herein, Luxor is entitled to recover damages from Defendants in an amount to be determined at trial

WHEREFORE, Luxor demands judgment against Intertransfers and Martins in an amount to be determined at trial, together with pre-judgment interest, the costs associated with bringing this action, and any further relief that the Court deems appropriate.

## PRAYER FOR RELIEF

Luxor asks that it be awarded a judgment against Defendants for the following:

1. For damages of a compensatory and general nature, in an amount according to proof as alleged and demanded above;

2. For treble damages pursuant to Fla. Stat. §772.11;

3. For an order declaring that all of the monies and other assets held by Defendants as alleged herein are held by Defendants as the constructive trustee for Luxor and requiring Defendants to return the same to Luxor;

4. For any other appropriate relief pursuant to Fla. Stat. §812.035;

5. For attorneys' fees pursuant to Fla. Stat. §772.11;

6. For costs of suit; and

7. For all other relief as the Court deems just.

Dated: February 17, 2012

        Respectfully submitted,

        s/Michael B. Chavies
        Michael B. Chavies (Florida Bar No. 0191254)
        michael.chavies@akerman.com
        Jeffrey T. Cook (Florida Bar No. 647578)
        jeffrey.cook@akerman.com
        Ilana Tabacinic (Florida Bar No. 057597)
        ilana.tabacinic@akerman.com
        **AKERMAN SENTERFITT**
        SunTrust International Center
        One Southeast Third Avenue - Suite 2500
        Miami, Florida  33131-1714
        Telephone: (305) 374-5600
        Facsimile:  (305) 374-5095

        *Attorneys for Plaintiff*